[No. C032288. Third Dist. June 5, 2000.]

JUAN CANO, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CARRANCHO
FARMS, INC., et al., Respondents.

**COUNSEL**

Law Offices of Frederick J. Gibbons and Manda G. Olmstead for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Rahn, Drivon & McCarthy, Rahn, McCarthy, Holbrook & Murphy, James A. Drivon, Patrick S. Scott for Respondents Carrancho Farms, Inc., and Cambridge Integrated Services Group, Inc.

**OPINION**

**RAYE, J.**—Petitioner Juan Cano, employed as a mechanic and truck driver by respondent Carrancho Farms, Inc., was assigned to dismantle a fiberglass tank. While Cano worked in the tank, a coworker's welding torch caused an explosion, igniting a fireball inside the tank. Cano suffered severe burns to his face, arms, hands, stomach, back, buttocks, thighs and legs. A findings and award issued by respondent Workers' Compensation Appeals Board (Board) found Cano suffered a permanent disability of 65 percent and was not entitled to further medical care. The Board also denied Cano's motion for reconsideration. Cano filed a petition for review, arguing the Board erred in failing to award him a precautionary award of continuing medical care. We issued a writ of review. We conclude the Board's decision is not supported by the evidence and is contrary to law.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 31, 1991, while employed by Carrancho Farms, Inc., Cano stood inside a tank he was repairing. A coworker's welding torch ignited a fireball inside the tank, severely burning Cano. These injuries kept Cano hospitalized for 47 days. Cano suffered second- and third-degree burns requiring extensive skin grafting. He later underwent multiple surgeries for burn treatments and skin grafting.

On October 8, 1998, the Board held a hearing on the issues of additional periods of temporary disability and wage loss, permanent disability, and the need for further medical treatment. At the hearing Cano testified burns from the accident covered most of his body. The burn areas itch, causing a

burning sensation which worsens with exposure to sunlight. In addition, the burns to Cano's face still cause pain.

Cano also testified the accident weakened both his arms. Prior to his injury, Cano could lift 100 pounds with both arms; now he can lift only 50 to 60 pounds. Numbness in his arms prevents the performance of repetitious acts involving his arms.

Cano wears long sleeves to protect the burn areas from sunlight. He also must avoid moisture to these areas. Heat, cold, dust and humid temperatures all exacerbate the injury.

The burns on his back cause pain if he sits for over an hour. He cannot squat, kneel or crawl because of the burns on his knees.

According to Cano, his physicians have not indicated further surgery to him, stating there is nothing more they can do. Cano testified if he were offered surgery that would help him, he would take it.

Cano also submitted medical reports by four physicians. Dr. Foster's report, dated October 23, 1993, contains a discussion of "[f]urther medical treatment": "The patient is still wearing Jobst compression garments and they have just about outlived their utility. The present garment is somewhat stretched out and ill-fitting; *however, a new garment is not necessary at this point.* I instructed him to discard the present garment after one more month. He also was instructed to keep all healed burns lubricated with a Vaseline-containing ointment after every bath and after every washing of the hands. He is instructed to avoid direct sunlight and to wear a hat and clothing that covers as much of the healed burn areas as possible. [¶] The remaining hypertropic scar contractures on the right cheek, right nasolabiel groove, left cheek, right lower lip, right arm and hand could be considerably improved with triamcinolone injections, *although they will continue to soften and fade and relax without those injections.*" (Italics added.)

Dr. MacMorran, in a report dated April 26, 1995, noted Cano suffered "slight to moderate" facial disfigurement. As to future medical care, Dr. MacMorran noted, "The patient has a flexion contracture of the right elbow which he plans to have surgically released in the future."[1] The doctor concluded, "No other specific treatment is indicated except perhaps for plastic surgery to the mouth in order to increase his buckle opening."

A report dated January 20, 1993, by Dr. Faggella discussed Cano's burns, stating "nothing specific from the standpoint of surgery or medications will

---

[1]Respondents assert this reference to planned elbow surgery for Cano is incorrect. According to the summary of evidence, Cano testified that doctors have not proposed further surgery.

correct or improve upon" the itching and burning sensation. Dr. Faggella also concluded: "The problem of the face is a chronic one and, here again, further surgical procedures for improvement and removal of the inflamed and infected materials would be indicated. All of this is in the phase of reconstructive surgery. Such procedures would be carried out under general anesthesia as either an in[-] or out-patient. Recovery periods would be determined by the extent of the procedures and the extent of the skin graftings."

Finally, a report by Dr. Seymour, dated January 3, 1994, recommends: "The patient should be evaluated by a plastic surgeon in order to establish his level of permanent disability residuals."

The Board found Cano 65.5 percent permanently disabled as a result of the accident. The Board further found, "Applicant is not currently in need of further treatment." Cano filed a petition for reconsideration. Carrancho Farms, Inc., filed an answer. A Board judge issued a report of workers' compensation judge on petition for reconsideration. The judge recommended denying Cano's petition, stating: "Having considered all of the evidence it appeared that in 1993 Dr. Foster, his treater, had only minimal suggested matters to be done to relieve applicant of the results of the injury. Applicant did not have treatment thereafter, and as of the time of the hearing, some five years later, it did not appear that there was any current need for treatment. If cosmetic surgery is warranted and justified, that may be, but it is not believed that in this case such treatment would relieve the effects of the injury, only looks. Applicant indicated that if surgery would help, he would be agreeable. There was no such treatment indicated."

The Board adopted and incorporated the judge's report and denied Cano's petition for reconsideration.

## DISCUSSION

### I

■ In considering a petition for writ of review of a decision of the Board, our authority is limited. We must determine whether the evidence, when viewed in light of the entire record, supports the award of the Board. This court may not reweigh the evidence or decide disputed questions of fact. However, we are not bound to accept factual findings of the Board if determined to be unreasonable, illogical, improbable or inequitable when viewed in the light of the overall statutory scheme. All aspects of workers' compensation law are to be liberally construed in favor of the injured

worker. (*Johnson v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 197, 200 [76 Cal.Rptr.2d 422].)

■ The decision of the Board denying or granting a petition for reconsideration must state the evidence relied upon and specify in detail the reasons for the decision. If the evidence relied upon and the reasons stated for the decision do not support it, the decision must be annulled. (*Fairview State Hospital v. Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 595, 599 [188 Cal.Rptr. 51] (*Fairview*).)

II

■ Cano argues the Board erred in failing to award him a precautionary award of continuing medical care since the medical reports he submitted indicate a need for future medical care. The Board contends Cano failed to prove a need for a precautionary award of continuing care and argues substantial evidence supports the Board's decision.

Cano begins by dissecting Dr. Foster's discussion of further medical treatment, arguing Dr. Foster called for replacing the Jobst compression garments. However, Dr. Foster stated, "a new [Jobst] garment is not necessary at this point." Dr. Foster made no mention of the need for such garments in the future.

Cano also contends Dr. Foster advised that the burns should be lubricated with Vaseline. Cano asserts he must purchase the ointment, but as the Board points out, Cano made no mention of any such expense at the hearing, nor has he made any request for reimbursement of such out-of-pocket expenses.

Cano also quotes Dr. Foster selectively to buttress his argument for an award of future medical care. Cano states Dr. Foster indicated hypertropic scars could be considerably improved with triamcinolone injections. However, Dr. Foster also stated the scars "will continue to soften and fade and relax without the injections." Dr. Foster, Cano asserts, recommended the use of hydroquinone cream. Dr. Foster suggested use of the cream, but also stated "this too is not absolutely necessary."

None of these arguments provide a basis for awarding future medical care. However, the record contains several references by physicians to a need for cosmetic improvements via plastic surgery. Dr. MacMorran noted further medical treatment might include "plastic surgery to the mouth in order to increase his buckle opening." Dr. Faggella also indicated reconstructive surgery would improve Cano's facial injuries. Dr. Seymour recommended an evaluation by a plastic surgeon to establish the level of permanent disability. Cano does not pursue this area of future medical treatment in his briefs.

In denying Cano's petition for reconsideration, the Board judge considered a future medical need for reconstructive surgery but found: "If cosmetic surgery is warranted and justified, that may be, but it is not believed that in this case such treatment would relieve the effects of the injury, only looks." The Board adopted this reasoning.

The Board's conclusion conflicts with the Supreme Court's decision in *County of Los Angeles v. Indus. Acc. Com.* (1927) 202 Cal. 437 [261 P. 295] (*County of Los Angeles*).) In *County of Los Angeles*, a pile driver dislodged a large splinter, which flew into the employee's face, injuring and disfiguring him. (*Id.* at p. 439.) The Industrial Accident Commission found the employee permanently disabled and awarded future medical treatment. (*Ibid.*) The treatment included a physician's recommendation of future plastic surgery by which " ' "the appearance of the patient could be markedly improved and he would wear an artificial eye." ' " (*Id.* at p. 441.) The employer objected to the award, arguing the proposed treatment was for cosmetic effect only. (*Ibid.*)

The appellate court considered the workers' compensation statutes then in effect and found " 'the purpose of any surgical attempt in connection with an injury received by an employee is to restore him to as nearly a natural and normal condition as may be possible or practicable, to the end that his earning power by reason of his injury may be diminished to the least possible extent. . . . In the instant case, that the present appearance of the employee would be a decided handicap to his obtaining employment "in an open labor market" is obvious. The evident purpose of some of the proposed surgical operations on the employee is to give him a more presentable personal appearance. In his present condition, by reason of his limitations and the natural competition in securing employment, it might, and in all probability would, be extremely difficult for the employee to secure even such work as he is capable of doing. If successful, the result of the proposed surgical operations would place the employee not only in a position where he could secure better and more remunerative employment than at the time he may command, but his improved personal appearance would assist in enabling him to retain such position. The probabilities are that the morale of the employee would be bettered and his self-respect and appreciation of his good-workmanship qualities be increased—all tending toward a rehabilitation and restoration of the earning powers of the employee as of the date of the injury which he sustained.' " (*County of Los Angeles, supra,* 202 Cal. at pp. 442-443.)

The Supreme Court endorsed the appellate court's reasoning as well as the appellate court's conclusion: " 'This court is therefore led to the conclusion

that even though conceding that the major object of the proposed surgical operations on the employee may be for "cosmetic purposes" only, the respondent Commission in making its order therefor was not acting in excess of its statutory powers.' " (*County of Los Angeles, supra,* 202 Cal. at p. 444.)

Under workers' compensation law, an employer's duty to provide treatment includes all medical, surgical, nursing and hospital care reasonably required to cure or relieve the effects of an industrial injury. (Lab. Code, § 4600; 1 Herlick, Cal. Workers' Compensation Law (5th ed. 1998) § 4.4, pp. 4-3.1 to 4-5.) "An award for continuing treatment must be supported by substantial medical evidence, and it can generally be said that an award will be upheld when there is precise, unequivocal, expert medical opinion regarding the need for future treatment. However, what constitutes substantial evidence depends on the facts of each case. For example, while a two-year-old medical report indicating the necessity of future treatment has been held insubstantial, the option of a single physician indicating the possibility of future complications and the need for future examinations has been held sufficient evidence to support an award for continuing treatment." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed., rev. 1999) § 5.03(4), p. 5-21, fns. omitted.) "Although the considered expert opinion of one physician may constitute substantial evidence to support a determination of the Board [citations], a medical report which is outdated and not based upon the essential facts extant at the time of the Board's decision does not constitute substantial evidence." (*Fairview, supra,* 138 Cal.App.3d at pp. 599-600.)

In the present case, three physicians, in reports from January 1993, January 1994, and April 1995, discussed the possible need for future cosmetic surgery. Although these reports were written several years prior to the 1998 Board hearing, they do appear "based upon the essential facts extant at the time of the Board's decision." (*Fairview, supra,* 138 Cal.App.3d at p. 600.) Cano's facial disfigurement constitutes a permanent, unchanging condition.

Nor does Cano's permanent disability rating, which presumably took into account Cano's facial disfigurement, preclude future medical care for cosmetic surgery. "Continuing medical treatment and a permanent disability rating are not necessarily incompatible. The California Supreme Court has held that continuing medical treatment may be awarded even though the case has been rated for permanent disability. Such instances would include irreversible disease requiring treatment, any necessary medication or treatment for blisters or skin grafts which break down periodically, or abrasions or blisters caused by the wearing of some medical appliance. [Citations.]" (1 Herlick, 1 Cal. Workers' Compensation Law, *supra,* § 4.15, p. 4-13.)

Here, the Board found even if cosmetic surgery was warranted and justified, it was not an appropriate future treatment because cosmetic surgery would not relieve the effects of the injury but only Cano's physical appearance. In *County of Los Angeles, supra*, 202 Cal. 437, the Supreme Court rejected such reasoning. We find the Board's factual finding concerning cosmetic surgery unsupported by California law. In addition, we find Cano's request for future medical treatment as regards future cosmetic surgery supported by substantial evidence.

## DISPOSITION

The Board's decision is annulled, and the matter is remanded for further proceedings consistent with this decision. Cano shall recover his costs.

Scotland, P. J., and Davis, J., concurred.